IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GARY WILLIAMS, et al., : | |
| : | |
| Plaintiffs, : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO. 14-6727 |
| U-HAUL INTERNATIONAL, INC., : | |
| U-HAUL CO. OF CALIFORNIA, COLUSA : | |
| QUICK SERVICE MARKET, K&B : | |
| TRANS., INC. : | |
| : | |
| Defendants. : | |

MEMORANDUM

TUCKER, C.J.                                                                                           January 14, 2015

Presently before the Court is a Motion to Dismiss pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6) or, in the alternative, a Motion for More Definite Statement pursuant to Rule 12(e), filed by Defendants U-Haul International, Inc. ("U-Haul International"), U-Haul Company of California ("U-Haul California"), and Colusa Quick Service Market ("Colusa QSM"). (Doc. 7.) Upon consideration of the Defendants' motion, Plaintiffs' response thereto, and for the following reasons, Defendants' motion will be DENIED IN PART and GRANTED IN PART.

I.      FACTUAL AND PROCEDURAL BACKGROUND

Because the Court writes primarily for the parties, it sets forth only those facts that are relevant to its conclusion. Plaintiffs are Gary and Nina Williams, husband and wife, who are citizens and residents of the Commonwealth of Pennsylvania. On or before February 28, 2012, Plaintiff Gary Williams purchased a power adapter from a U-Haul store in Yuba City, CA, which allowed him to use his sport utility vehicle ("SUV") to tow a U-Haul trailer. He then went to Colusa QSM and rented a 1994 U-Haul twin axle box trailer. (Fifth Am. Compl. ¶¶ 17-19, Ex.

1

A, Doc. 1.)  Colusa QSM is an authorized independent dealer of U-Haul California.  (Fifth Am. Compl. ¶ 5; Mem. in Supp. of Defs.' Mot. to Dismiss, 2, Doc. 7.)

On or about March 2, 2012 at approximately 2:00am, Plaintiff Gary Williams was driving his SUV, hitched to the loaded U-Haul trailer, on Interstate Highway 80 in Henry County, IL during a trip from California to his home in Norristown, PA.  While traveling in the right eastbound lane, the SUV and U-Haul trailer "jackknifed"[1] and came to a rest across both eastbound lanes.[2]  The trailer's lighting system was not functioning at the time and its visibility to other motorists was impaired.  (Fifth Am. Compl. ¶¶ 25-27.)  Meanwhile, a tractor trailer truck owned by K&B Transportation, Inc. ("K&B") was traveling in the right eastbound lane behind Plaintiff's vehicle.  The truck collided with Plaintiff's stopped vehicle, causing his SUV to separate from the U-Haul trailer and pushing both into the center median.  (*Id.* ¶ 28, 30.)

As a result of the collision, Plaintiff Gary Williams sustained serious, permanent injuries including traumatic brain injury, subarachnoid hemorrhage, multiple fractures of the ribs, left clavicle and lumbar spine, splenic laceration, and left hemopneumothorax.  Plaintiff underwent multiple surgical procedures and will require continued medical care.  (*Id.* ¶¶ 31, 60.)

Initially, Plaintiffs filed suit in state court.[3]  Upon the filing of Plaintiffs' Fifth Amended Complaint, complete diversity existed and Defendants U-Haul International, U-Haul California, Colusa QSM, and K&B removed the matter to this Court on November 24, 2014.  (Doc. 1.) Plaintiffs alleged the following claims against U-Haul International, U-Haul California, and

---

[1] To "jackknife" means "to have the back part slide out of control toward the front part." MERRIAM-WEBSTER (Jan. 13, 2015), http://www.merriam-webster.com/dictionary/jackknife.
[2] The parties dispute why the SUV-trailer combination jackknifed: Plaintiff alleges that defective conditions in the trailer's design, manufacture, braking system, and stability caused the jackknife (Fifth Am. Compl. ¶ 22, 26); Defendants contend that Plaintiff was making a U-turn on the highway (Mem. in Supp. of Defs.' Mot. to Dismiss, 2).
[3] Plaintiffs also filed a related case arising from the same occurrence against General Motors, LLC, which Plaintiffs allege was the manufacturer of the SUV that Plaintiff Gary Williams was driving.  *See Williams, et al. v. General Motors LLC*, No. 14-3891 (E.D.Pa.) (Tucker, J.).

Colusa QSM ("Moving Defendants"): strict product liability (Count I), negligence (Count II), reckless conduct (Count III), personal injuries (Count V), and loss of consortium (Count VI).[4] Moving Defendants filed their motion to dismiss on December 3, 2014 and Plaintiffs filed a timely response on December 17, 2014.  (Docs. 7, 12.)

## II.  STANDARD OF REVIEW

Rule 8(a)(2) requires that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  A court must accept as true all allegations contained in a complaint, but need not consider legal conclusions contained therein.  *Id.*

The Third Circuit has established a three-step analysis for assessing the sufficiency of a complaint.  *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012); *Argueta v. U.S. Immigration and Customs Enforcement*, 643 F.3d 60, 73 (3d Cir. 2011).  First, the court determines the elements a claimant must plead to state a claim.  *Bistrian*, 696 F.3d at 365.  Second, the court identifies and strikes allegations in the complaint that are mere conclusions and thus not entitled to the assumption of truth.  *Id.*  These include "unadorned, the-defendant-unlawfully-harmed-me accusation[s], labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertion[s]."  *Argueta*, 643 F.3d at 72 (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted).  And third, the court should assess the plausibility of the remaining

---

[4] Count IV alleges a negligence claim against Defendant K&B, who is not a party to the instant motion.

factual allegations to conclude whether they give rise to an entitlement for relief.  *Bistrian*, 696 F.3d at 365.

Under Rule 12(e), a party "may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."  The motion must "point out the defects complained of and the details desired."  Rule 12(e) provides a procedural tool by which to obtain the factual basis of a plaintiff's claim when an initial pleading does not suffice.  *Thomas v. Independence Twp.*, 463 F.3d 285, 301 (3d Cir. 2006).  When proper, the court is to grant a motion and demand more specific factual allegations about the conduct that forms the basis of a plaintiff's claims.  *Id.*

## III. DISCUSSION

The Moving Defendants argue that the Fifth Amended Complaint does not meet the pleading standard of Rule 8 because it has "no information whatsoever as to who negligently or carelessly did what or the actual product defect(s) at issue."  (Mem. in Supp. of Defs.' Mot. to Dismiss, 6.)  The Court construes this as a challenge under Rule 12(b)(6) to the sufficiency of Plaintiffs' strict product liability, negligence, and reckless conduct claims.  Moving Defendants also argue that the "collectivized pleading" of allegations violates Rule 8(a) and that claims for punitive damages are unsupported.  The Court will address each issue in turn.  The Court will also address Defendants' Motion in the Alternative for a More Definite Statement under Rule 12(e).

### *A. Plaintiffs Sufficiently Plead a Claim of Strict Product Liability (Count I)*

Moving Defendants first argue that the Fifth Amended Complaint fails to allege any "actual product defect(s)" to support Plaintiffs' claim under a theory of strict product liability.  (Mem. in Supp. of Defs.' Mot. to Dismiss, 6.)  In *Tincher v. Omega Flex, Inc.*, the Supreme

Court of Pennsylvania recently ruled on what evidence is required to prove a claim of strict liability.[5]  No. 17 MAP 2013, 2014 WL 6474923, at *62-68 (Pa. Nov. 19, 2014) (declining to adopt the strict liability analysis of the Third Restatement of Torts and reaffirming the application of Section 402A of the Second Restatement).  A claim for strict liability is one that "sounds in tort, i.e. the cause involves breach of duties 'imposed by law as a matter of social policy[.]'"[6] *Id.* at *63.  Strict liability is presumed to be available with respect to any product as long as the evidence sufficiently proves a defect.  *Id.* at *44.  A person or entity that sells a product has a non-delegable duty to make the product without "a defective condition unreasonably dangerous to the consumer."  *Id.* at *46; *Webb v. Zern*, 220 A.2d 853, 854 (Pa. 1966).  The manufacturer and all suppliers in the chain of distribution are subject to this duty.  *Tincher*, 2014 WL 6474923, at *45.  To establish breach, a plaintiff must prove that a seller placed a product on the market in a "defective condition."  *Id.* at *46.  And to prove a "defective condition," a plaintiff must show either (1) the danger is unknowable and unacceptable to the average or ordinary consumer ("consumer expectations standard") or (2) a reasonable person would find that the risk of harm caused by the product outweighs the burden or costs of taking precautions ("risk-utility standard").  *Id.* at *49-51, *63.

       This Court finds that Plaintiffs sufficiently plead a claim of strict product liability under Pennsylvania law.  Plaintiffs claim that Colusa QSM "was in the business of renting U-Haul owned trailers and selling and installing U-Haul branded accessories," which the Court accepts as true for purposes of this review.  (Fifth Am. Compl. ¶ 6.)  Colusa QSM is therefore a "person

---

[5] Since both parties cite Pennsylvania law in discussing substantive issues, this Court, sitting in diversity, likewise applies Pennsylvania law and declines to conduct a choice of law analysis.

[6] Though the *Tincher* court discussed the applicable strict liability standard in the context of a design-related claim, it noted that its principles may have broader application.  2014 WL 6474923, at *47 n. 21.  Accordingly, this Court applies the standard set forth in *Tincher* to Plaintiffs' products liability claim, which alleges design, manufacturing, and failure-to-warn defects.

or entity that sells a product" with a duty to make and/or market a product without an unreasonably dangerous defect. *See Tincher*, 2014 WL 6474923, at *46. Plaintiffs also aver that "[Colusa QSM] was owned by, managed by and/or an authorized agent of defendants U-Haul International and/or U-Haul California." (Fifth Am. Compl. ¶5.) It may be reasonably inferred that U-Haul International and U-Haul California are, like Colusa QSM, part of the distribution chain of the allegedly defective power adapter and trailer. They too would be subject to the same duty to make and market products without dangerous defects. *See Tincher*, 2014 WL 6474923, at *64 ("[A]ll sellers in the distributive chain are legally responsible for the product in strict liability."); *Reese v. Ford Motor Co.*, 499 F. App'x 163, 167 (3d Cir. 2012) (finding that plaintiffs need not show which entity in the distribution chain created the defective condition to prevail in a strict liability claim).

The Fifth Amended Complaint also contains sufficient allegations of breach. About the power adapter, Plaintiffs described a defective condition causing "inoperable or improperly operating trailer lights." (Fifth Am. Compl. ¶ 18.) About the U-Haul trailer, Plaintiffs described defective conditions in the "braking system, stability, reflectorization and lighting system." (Fifth Am. Compl. ¶ 22.) The Amended Complaint goes on to list specific "defects," which the Moving Defendants characterize as "bald allegations." (Mem. in Supp. of Defs.' Mot. to Dismiss, 6.) The Court agrees that many of the averments are conclusory, but after striking those statements, the Court finds just enough factual allegations to infer that a defective condition existed. For example, Plaintiffs claim that the trailer had "brake lines and a master cylinder that would permit operation without brake fluid or the proper amount of brake fluid," the trailer's "lighting system was not properly operating," and the trailer did not have "proper reflectorization." (Fifth Am. Compl. ¶ 36.) Based on these allegations, it may be reasonably

6

inferred that, under the consumer expectations standard, the adapter and trailer contained defects unknowable and unacceptable to an average consumer who would expect to use U-Haul products with adequate safety features.  It may also be inferred that, under the risk-utility standard, the dangers of jackknifing and reduced trailer visibility outweigh the burden of protecting against them.  Thus, the Court concludes that Plaintiffs' Fifth Amended Complaint pleads a facially plausible claim for relief under strict liability.

### *B. Plaintiffs Fail to Plead a Claim of Negligence (Count II)*

The Moving Defendants also take issue with the sufficiency of Plaintiffs' negligence claim.  The Fifth Amended Complaint does not specifically allege which negligence theory or theories Plaintiffs are pursuing.   Based on their averments, Plaintiffs appear to bring their claim under theories of negligent failure to test, negligent failure-to-warn, and negligent design and manufacture.  (Fifth Am. Compl. ¶ 40.)  Pennsylvania law does not recognize a cause of action for negligent failure to test, so the Court will only consider Plaintiffs' negligence claim under failure-to-warn and design/manufacture theories.  *See Viguers v. Philip Morris USA, Inc.*, 837 A.2d 534, 541 (Pa. Super. Ct. 2003) ("[T]he claim for 'negligent failure to test' is not a viable cause of action recognized by our courts[.]"), *aff'd*, 881 A.2d 1262 (Pa. 2005).

To state a claim for negligence under a failure-to-warn, design, or manufacture theory, a plaintiff must show that (1) the manufacturer owed a duty to the plaintiff, (2) the manufacturer breached that duty, and (3) the breach was the proximate cause of plaintiff's injury.  *Maldonado v. Walmart Store No. 2141*, Civil Action No. 08-3458, 2011 WL 1790840, at *16 (E.D.Pa. May 10, 2011) (citing *Dauphin Deposit Bank and Trust Co. v. Toyota Motor Corp.*, 596 A.2d 845, 849-50 (Pa. Super. Ct. 1991)); *see Salvio v. Amgen, Inc.*, 810 F. Supp. 2d 745, 752 (W.D.Pa. 2011) (applying the same standard to claims of negligence under failure-to-warn, design, and

manufacture theories).  A claim of negligent design "turns on whether an alternative, feasible, safer design would have lessened or eliminated the injury plaintiff suffered."  *Berrier v. Simplicity Mfg., Inc.*, 563 F.3d 38, 64 (3d Cir. 2009) (internal quotation marks omitted).  Unlike strict liability, negligence requires proof that the manufacturer was at fault.  *Maldonado*, 2011 WL 1790840, at *16.

In stating a claim for negligent failure-to-warn, Plaintiffs include only one relevant statement:

> This accident was caused by the negligence, carelessness, negligence per se and recklessness of U-Haul, both generally and in the following particular respects . . . failing to properly display necessary warnings and instructions for the safe use of the U-Haul trailer and 7 round to 4 flat adapter, which caused or contributed to the jack-knife [sic] event and the reduced visibility of the trailer[.]

(Fifth Am. Compl. ¶ 40.)  Plaintiffs neither describe the alleged warning failure nor plead facts to substantiate a causal connection between inadequate warnings and Plaintiffs' injury.  The Court cannot give credence to such a conclusory, naked assertion.  Thus, Plaintiffs fail to state a claim for negligent failure-to-warn.

In stating a claim for negligent design/manufacture, Plaintiffs list a number of acts, which they present as breaches under a negligence standard.  These include "designing the U-Haul trailer in a manner that would lead to its operation without brake fluid or the proper amount of brake fluid," "designing the U-Haul trailer in a manner that permitted brake lines to become detached during normal operation," and "designing the U-Haul trailer with a defective lighting system that prevented the lights from properly operating."  (Fifth Am. Compl. ¶ 40.)  These allegations are identical to those made under Plaintiffs' strict liability claim.  As discussed, after striking conclusory material, the Court is left with allegations that a defective condition existed, which is sufficient to state a claim of strict liability.  However, Plaintiffs provide no factual

allegations as to Moving Defendants' fault, which is required in negligence actions. *C.f. Tincher*, 2014 WL 6474923, at *64 ("Essentially, strict liability is a theory that effectuates a further shift of the risk of harm onto the supplier than . . . negligence[.]"). Regardless, what is ultimately fatal to Plaintiffs' negligence claim is their failure to identify anywhere in the Fifth Amended Complaint a safer, feasible alternative design that would have lessened or eliminated Plaintiffs' injuries. Thus, Plaintiffs fail to state a claim for negligent design/manufacture.

### *C. Plaintiffs Fail to Plead a Claim of Reckless Conduct (Count III)*

Moving Defendants also challenge Plaintiffs' pleading of reckless conduct. For claims of reckless conduct, Pennsylvania courts cite to the Restatement (Second) of Torts, which defines "reckless disregard" as follows:

> The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

*Tayar v. Camelback Ski Corp., Inc.*, 47 A.3d 1190, 1200-01 (Pa. 2012) (quoting Restatement (Second) of Torts § 500 (1965)). "In other words, to establish a reckless state of mind, a plaintiff must prove that the defendant knew or had reason to know that (1) his conduct created an unreasonable risk of harm to another, and (2) that the risk created by his conduct was substantially greater than the risk necessary to establish negligence." *Tayar v. Cambelback Ski Corp., Inc.*, 957 A.2d 281, 290 (Pa. Super. Ct. 2008), *aff'd in part, rev'd in part*, 47 A.3d 1190 (Pa. 2012).

In alleging their claim of reckless conduct, Plaintiffs make general statements that Moving Defendants knew or should have known that they were selling or renting defective products and that they disregarded the known risks of jackknifing, reduced visibility, and

9

accidents associated with such actions. (Fifth Am. Compl. ¶¶ 45-49.) Plaintiffs offer no facts to support how or why Moving Defendants would have this knowledge. Neither do Plaintiffs allege any facts to show that the risk created by Moving Defendants' conduct was substantially greater than that necessary to establish negligence. They argue that the adapter and trailer were in defective and dangerous conditions "which could lead to accidents resulting in serious injuries or death," but without more, this argument is a mere conclusion. (Fifth Am. Compl. ¶ 45.) Therefore, Plaintiffs fail to state a claim for reckless conduct.

### D. Plaintiffs Provide Fair Notice to Each Moving Defendant

Moving Defendants argue that Plaintiffs impermissibly used "collectivized pleading" by making "generic and conclusory statements that 'all defendants' acted negligently, were reckless or distributed a defective product." (Mem. in Supp. of Defs.' Mot. to Dismiss, 8, Doc. 7.) Moving Defendants contend that because they are "three (3) separate and distinct business entities," Plaintiffs must give "fair notice" of their claims as to each defendant and cannot resort to collective allegations. (*Id.*) As support, Moving Defendants cite *Garland v. US Airways, Inc.*, which dismissed claims against individual defendants when the complaint merely referred to the defendants in the captions of each count or made generic and conclusory statements that these defendants acted unlawfully. Civil Action No. 05-140, 2007 WL 921980, at *11 (W.D.Pa. Mar. 14, 2007). Because the Court has dismissed Plaintiffs' claims for negligence and reckless conduct, it will consider Moving Defendants' argument as it applies to the strict liability claim.

The Court finds that the Fifth Amended Complaint gives fair notice of Plaintiffs' strict liability claim to each of the Moving Defendants. Under strict liability, any supplier of a product is subject to a duty to make and sell products free of defective conditions unreasonably dangerous to the consumer. *Tincher*, 2014 WL 6474923, at *45, *64. Unlike the plaintiff in

10

*Garland*, Plaintiffs here provide more than generic and conclusory statements about the defendant's liability.  The Fifth Amended Complaint states that, on or about February 28, 2012, Plaintiff Gary Williams purchased the allegedly defective adapter from the U-Haul store in Yuba City, CA.  (Fifth Am. Compl. ¶ 17.)  He then rented the allegedly defective trailer from Colusa QSM.  (*Id.* ¶ 19.)  Plaintiffs further allege that Colusa QSM was an agent for U-Haul International and/or U-Haul California.  (*Id.* ¶ 5.)  By identifying all three Moving Defendants as suppliers in the distribution chain of either the adapter or the trailer, Plaintiffs provide fair notice of their strict liability claim against them.  *See also Thomas v. Luzerne Cnty. Correctional Facility*, 310 F. Supp. 2d 718, 721 (M.D.Pa. 2004) ("Where the essence of the complaint against multiple defendants is a scheme, plan or course of conduct, Fed. R. Civ. P. 10(b) does not require that each claim against each defendant be stated separately merely because all of the defendants may not be involved in each transaction or occurrence.").

### *E. Plaintiffs Fail to Plead a Claim for Punitive Damages*

Moving Defendants seek dismissal of all Plaintiffs' claims of punitive damages, which appear in the *ad damnum* clause of each count of the Fifth Amended Complaint.  In Pennsylvania, "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others."  *Hutchison ex rel. Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005).  In determining whether punitive damages are proper, "the state of mind of the actor is vital."  *Id.* at 770 (quoting *Martin v. Johns-Manville Corp.*, 494 A.2d 1088, 1097 n. 12 (Pa. 1985)).  A punitive damages claim must be supported by evidence showing that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted or failed to act in conscious disregard of that risk.

*Id.* at 772.  Moreover, a remedy of punitive damages is an "extreme" one available only in the most exceptional cases.  *Phillips v. Cricket Lighters*, 883 A.2d 439, 445 (Pa. 2005).

For the same reasons that Plaintiffs fail to state a claim of reckless conduct, they also fail to state a claim for punitive damages.  As discussed, Plaintiffs only make conclusory allegations as to whether Moving Defendants knew or should have known that their conduct created an unreasonable danger to Plaintiffs.  The allegations in the Fifth Amended Complaint do not demonstrate that Moving Defendants had a subjective appreciation of harmful risk or that they consciously disregarded that risk.  Thus, Plaintiffs fail to state a claim for punitive damages and such exemplary damages are foreclosed.

### *F. Plaintiffs' Fifth Amended Complaint is Not so Vague and Ambiguous that a More Definite Statement is Warranted*

Finally, Moving Defendants move in the alternative for a more definite statement pursuant to Rule 12(e).  Courts have ordered a more definite statement when the complaint does not include enough basic facts for a defendant to prepare a response.  *See, e.g., Henderson v. Edens Corp.*, Civil Action No. 09-1308, 2014 WL 7008449, at *1-2 (E.D.Pa. Dec. 11, 2014) (ordering an amended complaint when the original complaint did not describe what happened to the plaintiff, who was involved, or which rights were violated); *Everly v. Allegheny Cnty. Exec. Dir.*, 456 F. App'x 82, 83 (3d Cir. 2012) (agreeing with district court's order for a more definite statement when the plaintiff's complaint "lacked essential information and was extremely difficult to follow"); *Binsack v. Lackawanna Cnty. Prison*, 438 F. App'x 158, 160 (3d Cir. 2011) (affirming dismissal when the complaint was "excessively voluminous and unfocused as to be unintelligible . . . and it left the defendants having to guess what of the many things discussed constituted deliberate indifference on their part[.]").  However, "Rule 12(e) motions are 'generally disfavored' and are meant 'to provide a remedy for an unintelligible pleading rather

than as a correction for a lack of detail.'" *Henderson*, 2014 WL 7008449, at *1(quoting *Frazier v. Se. Pa. Transp. Auth.*, 868 F. Supp. 757, 763 (E.D.Pa. 1994)). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation marks omitted).

The Fifth Amended Complaint is not so deficient that this Court will order a more definite statement. Plaintiffs set forth sufficient facts for Moving Defendants to know that their claims rest on events that allegedly took place on or about February 28, 2012 and March 2, 2012. The Fifth Amended Complaint also enumerates the legal claims asserted in Section III titled "Causes of Action." (Fifth Am. Compl. ¶¶ 35-54, 59-67.) Though Moving Defendants may desire greater detail, the Fifth Amended Complaint is sufficiently specific to satisfy Rule 8 and the Court will not require more.

## IV.     CONCLUSION

For the reasons set forth above, the Court denies in part and grants in part Defendants' Motion to Dismiss or, in the alternative, a Motion for More Definite Statement. An appropriate order follows.